We will call the first case, which is United States v. Walker. I see counsel here. Good morning. Good morning, your honors. I just have to put this down slightly. Yep, it's adjustable. There we go. Some of us are not as tall as others. Good morning, your honors. Good morning, Judge Calabrese. I hope you feel better. Thank you. May it please the court, my name is Jillian Harrington, and I, along with Martin Siegel, were assigned by this court to represent Mr. Shondell Walker on this direct appeal. I did not represent Mr. Walker in the district court below, although Mr. Siegel did represent him. As the court is, of course, aware, we raised a couple of issues. I'd like to start with the procedural defects in the sentencing before the district court. What happened in this case is really pretty simple. Mr. Walker pleaded guilty about a year after he was arrested. Yes, there were several adjournments that were requested by the defense and by the government, and then they got to the point where it was several years into the case, and the government now asked for an adjournment so that they can wait until after the trial of Ronald Herran, who was the big kahuna. He was the organizer of this fairly large-scale narcotics distribution organization. What's wrong with that? Well, there are several things that are wrong with that, but going back to the—well, we can start there. I was going to start with the plea agreement, but we can start there. The government was waiting. They presented him with this plea agreement that included a sentencing guidelines calculation of 108 to 135 months. It included only one enhancement for a gun. Now the government was continuing to investigate. Now, we all know that these are estimates that are put into a plea agreement, and we all explain that to our clients. That could change. It could go up. The problem is that they wanted to wait because they wanted to get more evidence. They really didn't need more evidence. They had this criminal complaint. It depends on the meaning of the word need. Well, the problem is they start the case with their criminal complaint, and in their criminal complaint, if we look at it, it makes several allegations against Mr. Walker, and those allegations included, generally speaking, that he was a gun-toting enforcer. That's a different point, and I think you may have a good point on that they already knew about that when they entered into the plea agreement, but I don't see why in general, after the defendant has postponed for several years the sentencing at his request, and the government now has a trial coming up that will bring to light, perhaps, new information, as trials often do, why it's unreasonable for them to say, wait till the trial's over in case there's new information. Well, I think that these two issues, although raised separately, they are intertwined, and part of- I disagree with you on the procedural one, but I agree with you on the other one. I have to rule against you because- I think that a full and complete understanding of the procedural problems with the sentencing is also connected to the problems with the adjournment of the sentence, and that being that there were witnesses, and a plethora of witnesses, who were presented at Heron's trial, who were cooperating witnesses and others, who presented a whole host of evidence for the by Mr. Walker's attorney. In fact, the government once made an argument that it's okay because they will be subject to cross-examination by other attorneys, including Heron's attorneys, which I think that's kind of- What is wrong with the judge using for sentencing information that the judge acquires and credits listening to what happens in a related trial? Right. We all know that's the law of the land of this circuit as well as the Supreme Court. I've argued that in other cases as well. But that's what happened here. Yes, and that- so if your honors are of that mind for that issue, I think we can take it back to the original issue of the procedural problem here, is that Mr. Walker was presented with this plea agreement. They had this information. They called him an enforcer in their complaint. They didn't know that he was going to perjure himself and he concedes that he did perjure. Yes, he does. In the Heron case. Yes, he does. And the judge took a very dim view of it because he said, you know, you made an effort to achieve the acquittal of a rather horrible person, a big homie of the murder bloods or if I understand your point, at least so far as the original complaint is concerned, is that there should never have been at the government's suggestion a two-level enhancement for use of violence and a two-level enhancement for Mr. Walker's aggravating role because all the relevant facts supporting those were known to the government when they entered into the plea agreement. Thank you very much, your honor. You just made my point. Absolutely. Those, those made a big difference in the calculation. Huge. He went from 108 to 135 to 360 to life. Also including the obstruction of just and adjustment enhancement, as well as the removal of the acceptance of responsibility enhancement. And all of this, this information was included in the on thin ice, uh, trying to argue against the, uh, the, um, the, uh, the perjury issue of the obstruction of justice, uh, and the acceptance of responsibility issues. But wouldn't that have substantially affected the range without considering at all, those things that you say were already known to the government? It would have definitely, um, would definitely have affected the range. I mean, a few months ago, came to this court and said, we need to go back to the district court. We need to figure out if this obstruction enhancement was looked at by the district court as a breach of the plea agreement, which it wasn't. There was no provision in the plea agreement that had anything to do with him. This was not a cooperation agreement. This was, he, he lived out, there were several, um, requirements that Mr. Walker had to fulfill, including not questioning the weight, um, not appealing if he got over a certain sentence. There were certain responsibilities that listed in that plea agreement, none of which included testifying on behalf of the government or otherwise at a co-defendant's trial. So to call this a breach of that plea agreement and to give him the obstruction of justice enhancement based on a breach of a plea agreement, which is what they said in the pre-sentence report was that this was breach of the plea agreement. And the government admitted in this motion to vacate and remand that was denied by this court, not on the merits of that argument, but mainly as a judicial economy issue that we should resolve some of these issues here first. And perhaps, and we're now saying that maybe we need to go back to the district court and resolve some of these issues. But the, the, in the criminal complaint, they say that he carried guns, that he was involved in a shooting on behalf of Huron in order to protect. Aren't there more instances of that that came out at the Huron trial? There was more testimony about that. Yes. More instances. Yes. Yes, there were. But had Mr. this is the part where I think everything gets intertwined is that if Mr. Walker had been presented with a plea agreement that included these enhancements, there's a good chance he Mr. Walker feels and what we've been arguing on his behalf is that he was enticed into pleading guilty by the government, leaving out these enhancements that they very well could have and perhaps should have included in that plea agreement. But if they had, they wouldn't have gotten this. That's the nature of a plea agreement, right? Each side gives up something. Yes. So they gave up that even though they had full knowledge of his. But now they say, oh, we learned some more, uh, some more about that at the trial. And that's what your complaint is. Absolutely. Is that I don't know. Is there anything that should trouble us about the fact that all this was done to get him to testify? How does that cut? Does that cut in his favor or does it come against? I believe that that is, um, I don't think anyone in the courtroom could understand that. Do you? I couldn't hear that. I don't think you're coming through. You're going in and out. Oh, okay. Doesn't matter. I'm sorry. I apologize, Your Honor. I, um, I think at the end of the day, that's what this part of this argument is, is it was almost like a bait and switch. The government didn't include these. He took the plea, even though the government had the information that they could have included it. So he gave up his right to, to, um, have a trial where he could, if he wanted to test the government's evidence, he could argue against it. He would have his attorney present to question these witnesses. He gave up those rights and he did so with the understanding that the estimated guidelines range again, we know it's estimated was 108 to 135. And then the government comes back using that information. Plus the information that they had. Some of the enhancements were justified. If these two were not justified, we still would have to send it back for resentencing. Yes. Yes, Your Honor. Yes, Your Honor. If Your Honors have no further questions, I'll rely on my briefs. Thank you. Thank you, Your Honors. I hope you feel better, Your Honor. Thank you. Good morning, Your Honors. May it please the court, Sam Nitze for the United States. And I was a member of the trial team in the Harran trial below and through sentencing, but not in the early stages of the investigation and indictment of the case. So in the complaint that was filed before he ever entered into any plea. Please speak right into the microphone. I'm sorry? Speak right into the microphone. I think he's saying try to speak into the microphone. Yeah. Okay. In the complaint that was filed before any plea agreement, I think the complaint against Mr. Walker dated October 5th, 2010. The government states that Walker, quote, served as one of Harran's primary security guards and enforcers and would thus regularly accompany Harran to narcotics transactions and carry firearms for Harran. Walker would also help to protect Harran's narcotics territory from rival narcotics traffickers and also help to extend Harran's narcotics territory by, for example, robbing or attacking rival narcotics traffickers. So you had, before you ever entered into a plea agreement, all the evidence that you needed for the enhancements for the use of violence and for the aggravating role, but you chose perfectly reasonably to say, okay, we want a plea agreement here. We'll give up something. We'll give up that. So that wasn't in the plea agreement. How can you get around that by saying, now we can add those on? A couple of responses to that, Your Honor. First, just in terms of the context of that complaint, it's a complaint that charges a narcotics conspiracy without weight associated with it. There are facts alleged by the affiant, the agent in support of that complaint, but the charge itself is a drug conspiracy, not conduct to do with weapons or violence. Number two, the complaint, you say you... Let me just stop you there. Yes. If you knew the facts, you knew the facts. Well, so to that point, you say you had all the facts you needed. We had facts that had come in through a confidential source and through a witness that the affiant was able to put into the complaint, but that's not the same thing as saying we had facts sufficient to prove that conduct at a Fatigo hearing or that those witnesses would have been available... But you could have gotten them before you entered into an agreement. I'm sorry, Your Honor. We did not... We had... It's certainly the case that the government had information supporting the allegation that Your Honor just read. It's an affiant swearing to it in a complaint. So there's no question about that. As the defense, the appellant... As the appellant concedes here, it is clearly true, as they say in the reply brief, that significant additional information relevant to the enhancements came after the plea. This complaint is filed in the middle of the hurly-burly of a complex investigation into a violent racketeering conspiracy in which witness intimidation fear... When you enter into, in that kind of situation, you enter into a plea agreement, you know inherently that the other information is going to emerge. And if the other information is completely different than anything you know before, your plea agreement says, fine, we can weasel out of it. But here, you knew already that he was, quote, one of Heron's primary security guards and enforcers, and he would protect the territory by robbing or attacking rival narcotics traffickers. So does that mean that you can enter into a plea agreement saying, okay, because we want to play, we'll forget about that, and then say, oh, you know, two weeks later, as part of this ongoing hurly-burly of an investigation, we found another incident that we didn't know about where he attacked someone, so we're going to ask for a further enhancement. Is that what you're saying? I think the short answer is yes. There may be a line at which there is an inference fairly drawn of bad faith if the government were to offer an agreement, and as your honor put it, a week later, they come back to sentencing and they add an enhancement. We're nowhere near that line here. Here you have a sentencing that is deferred for close to two years on motion of the defendant, and significant, significant is the term embraced by the defense and conceded in the reply brief, significant additional information relevant to those enhancements come in. The agreement as a matter of contract, which we understand is construed against the government and there are reasons for that, but there is, in more than one way, it says, this is an estimate, this is the best we can say now, but if for any reason that estimate changes, you're still on the hook for the agreement. I think the McPherson... Closing hypothetically in the negotiations, and I know you weren't part of that, if I understand correctly, on the plea agreement itself, were you? No, that's correct. Supposing the prosecutor says, we have you dead on the water on these two enhancements. There's no question that we could right now ask the judge for those enhancements, but this is a plea bargain. Each side's got to give up something. We'll give up that in return for your pleading guilty to what remains. The defense says, okay. You're saying that even when that kind of clear, explicit bargain is made, you can still get out of it if two weeks later you discover some, not something that's totally different in enhancement, but just more evidence of the particular enhancement. Your Honor, the portion of the plea agreement at issue here, which your Honor indicates gives an out, if for any other reason the estimate is different than the defendant is still bound. There are clearly reasons, although it says any other reasons, that would not be sufficient if it was based on racial animus or bad faith. I think your that would support an inference of bad faith. This is not the case here, but if a prosecutor said, we have you dead to rights on these enhancements, but we're not going to seek those enhancements, enter into the agreement, and then sometime later comes back and says, we've got you even more dead to rights now or some version of that, there is a fairer inference of bad faith to be drawn from the facts that you've just given. But it's very different from the factual context you have here on the record before the court. You have a complaint based on a cooperating source and a witness that alleges, it's no question, it alleges facts that would support those enhancements. In a case where there was real concern about losing witnesses, some witnesses were lost, and so the government is not prepared at that point to burn those witnesses or put them on the stand at a fatico and does not include the enhancements. Significant additional information comes, and I think it's fair to say, although it is... But isn't it almost always the case in a plea other evidence of the sort you've just given, and that's the nature of a plea agreement, that you give it up. Now it's... But when later we find it, we can go back on the agreement. Aren't you jeopardizing, seriously, plea agreements? Because they don't mean anything. If I understand your honor, and the microphone is breaking up, but I hear you to be asking, isn't it always the case at some level in the context of negotiating a plea agreement that the government is giving something up, and that there may be a different mix of facts at sentencing, and so because that is always the case, and was the case here, doesn't this suggest that the government is bound? Before I answer, am I fairly summarizing the question? Well, except that I said, does taking your position undercut the agreement generally? Because the arguments you are making now, in one form or another, can be made in almost any plea agreement. You don't do it many times, but the way you're posing it sounds to me as if it's something that the government had wanted to come back and do, and I think that would be very dangerous to plea agreements. The danger to plea agreements... An act in bad faith would be a danger to plea agreements, and this court has written about that, and I'm past my time, but if I could answer further. It is important, I think, to be careful about drawing inferences of bad faith. Here, there is an attempt to merge two potentially relevant sets of facts that actually don't relate one to the other. The first is that the government, that the sentencing was delayed. Well, the sentence, the government had no... Delayed for the purpose of awaiting additional facts to come back and hammer this defendant. The government had no way of knowing that the sentencing would be delayed at the defendant's motion for close to two years, or that the trial would be scheduled then, or that this additional under what is a Pimentel-based advice to the defendant about the general estimate of the guidelines range. When new information comes in, as I keep repeating, the defendant, the appellant has conceded significant additional information. In McPherson, a per curiam opinion, Judge Calabresi, Your Honor, was on the panel. In that case, there was an enhancement of six points to the offense level. When the government, it was clear the government knew all of the information before the plea was offered, and the court found no plain error. I think it's, we haven't discussed this yet, but we are on plain error review here, in part because there is some tension between Palladino and Habas, and in part because of the language of the plea agreement, the carve out for this being just an estimate. And Judge Newman, in a concurrence, I think put his finger on one of the points that we're grappling with here, which has to do with what did we know and how strong was it? And he said, if we start inquiring as to what the government knew at the time of the plea agreement, we open a difficult area. Would the government know of an offense if only the evidence was in the office, or if an agent had told a prosecutor about it, or if a confidential informant had told the agent about it? He's raising this prospect that to look back across the record and look at this complaint and say you had all you need for those enhancements, misses that significant additional new information came in, including cooperating witnesses who testified about this, the conduct relevant to these enhancements that were signed up after the plea. Information that was not available in a usable sense until after the plea. Thank you. I have a question, Ms. Harrington, if you would rejoin us for a moment. Okay. Got to go down again. Yeah, by all means. Your argument is that the government essentially mousetrapped your client, but it would appear that the trial judge was very interested in finding out what was going to happen at the Heron trial. When the judge granted the adjournment, said I'm advising the defense, the court may consider a sentence in excess of 135 months. I'm going to adjourn the sentencing on that basis alone. This is no minor case. The assertions in the PSR are extremely serious. The problems attendant to this defendant's behavior are part of a much bigger and unfortunate problem. So it appears that this may not be a case in which the government acted in bad faith in order to delay things, in order to increase the store of evidence on which the case was being enhanced, but that the judge was at least a motive force in that. I understand your Honor's position on that or the idea of that, but I think again, if that's your position on that, then we need to rewind. I don't have a position yet. No, I understand that. If that's your argument, we're playing moot court here. Yes. That if that indeed was your position on that, if we rewind to the procedural defect in including these enhancements and the government's failure to include them in the first place, had the government... I'm sorry. Forgive me for interrupting. That's okay. The agreement on its face, as the government has pointed out, gives them lots of outs to rely on new information, nothing certain. They will bring information to the attention of the judge, has lots of ways in which in good faith they can bring all sorts of stuff at any stage to the attention of the judge without breaching the agreement. My question is, did you... I know you weren't trial counsel, but did trial counsel to your ask for a hearing on what had been known to the government at the time they entered into the plea agreement? I know that there was a Fatico hearing requested. Yeah, but was it on that question or on something? I thought it was on the question of Mr. Walker's credibility or something like that. Maybe I'm not sure I remember. No, I mean, there was definitely a Fatico hearing requested, but I think... And denied, right? Yes. And I think we're... Was it denied? I'm not sure. I don't want to say the wrong thing. I know it was not held. Well, all right. It wasn't held. Yeah. I know there was not one, but I think that, again, we need to go back to this plea agreement. There may never have been a plea agreement if the government had included these enhancements. And as your honor read straight from the complaint, they had this information to now argue that this was early in the proceedings. They didn't have all of the evidence. The plea agreement was about a year after that complaint was filed. And the prosecutor admits that they were in the thick of this investigation. They knew what they knew at that point. They chose not to include those two enhancements. Thank you. Unless there are more questions. Are we good? Yes. Thank you, your honors. Thank you both. We'll reserve decision.